**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BRIAN MOORE,** | **Civil Action No. 19-15379 (MCA)** |
| **Plaintiff,** | |
| v. | **OPINION** |
| **SCO JESSE COLON, et al.,** | |
| **Defendants.** | |

State Defendants SCO Jesse Colon, SCO Carmen DeBari, Sgt. John Pomponio, Sgt. J. Soto, SCO Hahn, and Sgt. N. Stanicki ("Defendants") have moved for Summary Judgment on Plaintiff Brian Moore's ("Plaintiff" or "Moore") Eighth Amendment excessive force and failure to intervene claims, which are brought pursuant to 42 U.S.C. § 1983.  For the reasons explained below, the Court denies summary judgment on the Eighth Amendment excessive force claims against all moving Defendants and grants summary judgment on the failure to intervene claims against all moving Defendants.

## I.    FACTS & PROCEDURAL HISTORY

### a.  The Parties

On or around December 28, 2016, Plaintiff Brian Moore was housed in Rahway at East Jersey State Prison ("EJSP").  Defendants' Statement of Undisputed Material Facts ("SUMF") ¶ 1 (citing Ex. B, Excerpts of Plaintiff's Deposition, 9:21-10:12; 16:4- 2 3).  Defendants Colon, DeBari, and Hahn were Senior Corrections Officer at EJSP during the time relevant to this lawsuit.  *Id.* at ¶¶ 2-3, 7 (citing Ex. C, SCO Colon's Special Custody Report; Ex. D, SCO DeBari's Special Custody Report; Ex. H, Excerpts of Defendant Hahn's Answers to Interrogatories).  Defendants Pomponio, Soto, and Stanicki were Sergeants at EJSP during the

time relevant to this lawsuit.  *Id.* at ¶¶ 4-5 (citing Ex. E, Sgt. Pomponio's Preliminary Incident

Report; Ex. F, Excerpts of Defendant Soto's Answers to Interrogatories, 1).

### b.  The Two Alleged Assaults

On or about July 11, 2017, between 6pm and 6:30pm, Plaintiff stayed in his cell to

prepare his meal for dinner instead of going to "mess hall.  *Id.* at ¶ 9 (citing Ex. B, 11:5-14).

While Plaintiff was preparing his meal, Officer Colon came to his cell and told Plaintiff that if he

wanted to shower that day he had to do it now.  *Id.* at ¶ 10 (citing Ex. B, 11:18-22, 24:10-15).

Plaintiff knew SCO Colon as an officer who worked the night shift at EJSP on his housing unit

for about a month and a half.  *Id.* at ¶ 8 (citing Ex. B17:16-23).  Plaintiff told Colon he wanted to

take a shower, but objected to the timing, stating "since when do we have to take a shower

during the mess movement."  *Id.* at ¶ 11 (citing Ex. B, 11:23-25).

Plaintiff testified that dinnertime or "mess hall" fluctuates, but it is usually between

4:30pm and 6pm.  *Id.* at ¶ 12 (citing Ex. B, 18:2-8).  Plaintiff also testified that the usual window

to take showers is between 7pm and maybe 7:30pm.  *Id.* at ¶ 13 (citing Ex. B, 18:10-12).

Plaintiff and SCO Colon engaged in a verbal "back and forth."  *Id.* at ¶ 15 (citing Ex. B, 12:1-2).

Plaintiff told Officer Colon, "I want to take a shower, but I'm not going now. I'm going to finish

eating." *Id.* at ¶ 16 (citing Ex. B, 12:3-5).

Officer Colon left, and returned around 7:00pm; at that time, he asked Plaintiff's

roommate if the roommate wanted to shower.  When the roommate said yes, Colon permitted

him to shower.  *Id.* at ¶ 17 (Ex. B, 12:7-11).  Plaintiff told SCO Colon, "Now, I want to take a

shower, too."  *Id.* at ¶ 18 (citing Ex. B,  22:8; *see also id.*, 12:11-13).  SCO Colon responded,

"You told me you didn't want to shower."  *Id.* at ¶ 19 (citing Ex. B, 12:12-15).  Plaintiff became

upset and stated that SCO Colon was lying and reiterated that he wanted to shower.  *Id.* at ¶ 20

(citing Ex. B, 22:16-17).  SCO Colon told Plaintiff "well you're not getting a shower. I told you

earlier."  *See* Ex. B at 12:16-18.

Because Colon forced Plaintiff to choose between taking a shower or eating dinner,

Plaintiff asked to speak to a sergeant.  *See* Ex. B at 12:19-20; *see also* SUMF at ¶ 21 (citing Ex.

B, 21:9-17).  In response, Colon stated to Plaintiff, "Oh, you're trying to make me lose my job?"

Ex. B at 12:21-22.  SCO Colon left, and when he returned, he opened the door to let Plaintiff out

but then told him to go back into his cell.  *Id.* at ¶ 22 ( citing Ex. B, 26:6-9).  There was no

physical altercation at that time. *Id.* at ¶ 23 (citing Ex. B, 27:20-22).

Fifteen minutes later, SCO Colon came back again but did not bring a sergeant; Colon

told Plaintiff to come out for a shower.  *Id.* at ¶ 24 (citing Ex. B, 12:16-17); *see also* Ex. B, 26:2-

10.  Plaintiff gathered his shower shoes, a bucket, washcloth, towel and soap and exited the cell.

*Id.* at ¶ 25 (citing Ex. B, 28:13-22).  While Plaintiff walked down the walkway to the shower,

SCO Colon "attack[ed Plaintiff] from behind," Ex. B, 26:10-12, and began punching and hitting

Plaintiff.  Ex. B at 31:3-21; *see* also SUMF at ¶ 26.  Plaintiff held onto the chain on the fence to

the right in order to keep his balance.  SUMF at ¶ 27 (citing Ex. B, 31:13-15).  While Plaintiff

held the fence with his right hand, SCO Colon continued to hit Plaintiff while Plaintiff attempted

to block the punches.  *Id.* at ¶ 28 (citing Ex. B, 31:17-19).

As SCO Colon punched Plaintiff on the side of his face, Plaintiff saw SCO DeBari press

a button for a code.[1]  *Id.* at ¶ 29 (citing Ex. B, 31:23-24).  SCO DeBari then came running full

speed towards Plaintiff tackled him from the front, which caused Plaintiff to fall backwards.  *Id.*

at ¶ 30 (citing Ex. B, 32:14-25).  Both SCO DeBari and SCO Colon began punching Plaintiff,

---

[1] Defendants explain that "[a] 'Code 33' is called when there is an emergency in the prison, and
an officer at the scene needs assistance. In response to the Code 33, available officers report to
the area of the emergency to assist the officer who called the Code."  *See* SUMF at ¶ 29 n.1.

who let go of the fence and "curled up in a fetal position with both hands covering [his] face." *See* SUMF at ¶ 31 (citing Ex. B, 33:7-17). DeBari told Colon to "stop" so DeBari could try to get handcuffs on Plaintiff, and DeBari began "yanking on [Plaintiff's] arms." Ex. B at 33:19-21. Plaintiff initially kept his hands covering his face to avoid the blows, but he eventually allowed himself to be handcuffed. Ex. B, 33:23-25, 35:7-10; 35:22-24.

Plaintiff saw more officers who arrived after SCO DeBari initiated the code. SUMF ¶ 33 (citing Ex. B, 34:5-13). Plaintiff was already handcuffed, but Sergeant Pomponio, nevertheless deployed OC spray on Plaintiff.[2] *See* Ex. B, 36:1-14; SUMF ¶ 35 (citing Ex. E).

A suited escort team, which included SCO Hahn, Sgt. Sgt. Stanicki, and Sgt. Soto then escorted Plaintiff to the infirmary.[3] SUMF ¶ 36 (citing Ex. E). According to Pomponio's Preliminary Incident Report, the escort team consisted of four individuals, Officer Hahn, Officer Santana, Sgt. Soto, and Sgt. Stanicki.[4] *See* Exhibit E at 1. It is undisputed that the escort team did not include SCO DeBari or SCO Colon. *Id.* at ¶ 37 (citing Ex. B, 36:16-19).

According to Plaintiff, a nurse cleaned the blood, used milk to get the OC spray out of Plaintiff's eyes, and cleared him to be in a cell. *Id.* at ¶ 38 (citing Ex. B, 37:3-8). Defendants Hahn, Soto, and Stanicki accompanied Plaintiff to the 2x3 foot shower area for "decontamination," and Defendants Hahn and Soto state that there were three officers present in

---

[2] Officer Pomponio states in the Preliminary Incident Report that he deployed the OC spray to subdue Plaintiff prior to handcuffing him. *See* Exhibit E.

[3] Sgt. Soto admits that he supervised the medical escort of Plaintiff to the infirmary. *Id.* at ¶ 5 (citing Ex. F). Sgt. Stanicki and SCO Hahn also admit they escorted Plaintiff to medical. *Id.* at ¶¶ 6-7 (citing Ex. G, Ex. H).

[4] In their Answers to Interrogatories, Hahn, Stanicki, and Soto deny assaulting Plaintiff. *See* Exhibits F, G, & H. As noted above, G. Stanicki did not answer the Complaint and is not represented by the Attorney General's Office.

the shower area with Plaintiff.[5]  *Id.* at Exs. F, G, H; *see also* ¶ 39 (Ex. B, 37:9-11).  Plaintiff

testified that the members of the escort team kept banging his head against the wall in the shower

and in the hallway on the way to the shower.  *See* Ex. B, 37:19-24; 70:24-71:17.  Subsequently,

another officer stated "no more[.]"  SUMF at ¶ 40 (citing Ex. B, 38:19-24).

Plaintiff was transported to the infirmary, where Nurse O'Brien examined him.  Ex. E at

1.  Plaintiff was subsequently transported to Rahway hospital at the direction of Dr. Brambridge.

*See* Exhibit E at 1; *see also* SUMF at ¶ 42 (citing Ex. B, 39:1-13).

At Rahway hospital, Plaintiff received treatment for his injuries and a CAT scan.  SUMF

at ¶ 43 (citing Ex. B, 39:14-40-16).  Plaintiff was diagnosed with "acute lip laceration, acute

traumatic brain injury, and acute shoulder pain."  *See* ECF No. 60-1, Plaintiff's Exhibits at 5.

Plaintiff was released and subsequently transported to Northern State Prison.  SUMF at ¶ 44

(citing Ex. B, 40:22, 39:22-25).

### c.  The Disciplinary Charges, Hearing, & Appeal

Plaintiff received two disciplinary charges, \*.002, assault to any person and \*.306,

conduct which disrupts or interferes with the security or orderly running of the institution.  *Id.* at

¶ 46 (citing Ex. B, 42:13-20, 43:12-17).

On July 27, 2017, a disciplinary hearing officer conducted a hearing where Plaintiff had

counsel substitute and pled not guilty to the charges.  *Id.* at ¶ 47 (citing Ex. I, Brian Moore v.

New Jersey Department of Corrections, No. A-1208- 17T3 (App. Div. July 8, 2019) (slip op. at

2)).  The hearing officer found Moore guilty of \*.002, assaulting any person and \*.306, conduct

which disrupts or interferes with the security or orderly running of the correctional facility.  *See*

---

[5] Officer Stanicki states that no one was in the shower with Plaintiff, but there were two officers
just outside the shower.

Ex. J, *.002 Adjudication of Disciplinary Charge 20; Ex. K, *.306 Adjudication of Disciplinary

charge 18; *see also* SUMF at ¶ 49 (citing Ex. I (slip op. at 1)).  For the *.002 charge, Moore

received 356 days of administrative segregation, 365 days loss of commutation time and thirty

days loss of recreation privileges.  For the *.306 charge, Plaintiff received 180 days

administrative segregation, 180 days loss of commutation time and thirty days loss of recreation

privileges.  *See id.*; *see also* SUMF at ¶ 50 (citing Ex. I (slip op. at 2)).  In adjudicating Plaintiff

guilty of the *.002 assault charge, the hearing officer made the following brief findings:

> [Plaintiff pled] not guilty to assault and all evidence regarding the
> same was considered. [Plaintiff] was afforded all rights, witnesses
> & confrontation. [Plaintiff] denies any assault on staff. The staff
> reports, specifically, support that [Plaintiff] assaulted staff, and
> confrontation supports the same. There is sufficient evidence to
> support the charge.

*See* SUMF at ¶ 51 (citing Ex. J).  The hearing officer further stated: "[Plaintiff] needs to take

responsibility for his behaviour [sic]. [Plaintiff] has to follow rules of the facility. [Plaintiff]

needs to keep his hands to himself for safety and security of [the] facility."[6]  *Id.* at ¶ 52 (citing

Ex. J).

Plaintiff appealed the decision to the Assistant Superintendent, who upheld the charges

on August 3, 2017.  *See* Ex. I (slip op. at 2)).  Plaintiff subsequently appealed the decision and

charges to the Superior Court of New Jersey, Appellate Division.[7]  *See* Ex I.  The Appellate

---

[6] As to the *.306 charge, the hearing officer found "[Plaintiff pled] not guilty to charge, however, after review of All evidence thoroughly his behavior interfered with the running of the jail and [a] code was called. Thus all movements were delayed and counts delayed. The evidence supports the charge."  *See* Ex. K.

[7] The Appellate Division recited the following facts:

> Moore asserts that on July 11, 2017, during a mess movement, he
> and Senior Corrections Officer Colon got into an argument about
> when Moore could shower. According to Moore, Colon later
> instructed him to come out of his cell to shower, and when he did,
> Colon assaulted him from behind. Moore asserts Senior

Division affirmed the August 3, 3017 final decision of the Department of Corrections ("DOC") finding that the record contained sufficient evidence to support the hearing officer's decision. [8] Ex. I, (slip op. at 2).

### d. Plaintiff's Additional Witnesses

In opposition to summary judgment, Plaintiff has provided the certification of another inmate, Michael Martin ("Martin"), who resided at East Jersey State Prison on 3 Wing, 3 Tier Cell #325 on July 11, 2017. *See* Certification of Michael Martin ("Martin Cert.") at ¶ 2. Martin witnessed the first assault, and his certification corroborates Moore's version of events:

> I observed Officer Colon suddenly without provocation attack inmate Moore from behind by punching him in the back of inmate's Moore's head with a closed fist and then tackling Inmate Moore to the ground and continue assaulting inmate Moore with a flurry of closed fist blows.

---

> Corrections Officer De[B]ari intervened and punched, handcuffed and pepper sprayed him. Moore was taken to the infirmary where he claims officers slammed his head into the wall several times. He was transported to a hospital where he received stitches.

> According to the DOC, Moore was the aggressor who tackled Colon to the ground and resisted Colon's attempts to restrain him. This prompted a "Code 33," which delayed the movement of inmates back to their wings.

Slip Op. at 1.

[8] The Appellate Division stated as follows:

> Moore contends the hearing officer's decision was against the weight of the evidence. However, a DOC report described Moore as the aggressor and included De[B]ari's observation that he witnessed Moore wrestling with Colon. Moore's evidence was limited to his own recollection of events. Statements from other inmates failed to corroborate Moore's version of the altercation. Additionally, Moore's confrontation with Colon triggered a delay in the movement of inmates back to their wings. Thus, the record contains substantial credible evidence to support the hearing officer's decision.

Slip Op. at 2.

*See* Martin Cert. at ¶ 3.  According to Martin, Colon shouted at Moore to stop resisting.  *Id.*
DeBari then arrived on the scene and also "immediately began punching and kicking Moore
while yelling "stop resisting."  *Id.* at ¶ 4.  Martin further states that Pomponio also kicked and
punched Moore while telling him to "stop resisting," and that one of the officers deployed OC
spray.  *Id.* at ¶ 5.  Martin did not see who deployed the OC spray, however.  *Id.*  As Plaintiff was
restrained and carried away, Martin heard Officers Colon and DeBari discussing how they would
lie on their reports and say that Plaintiff was the aggressor.  *Id.* at ¶ 6.

Martin contends that he reported what he saw and heard to Lt. O'Keefe the following day
and also told Lt. O'Keefe he wanted to make a statement on Moore's behalf with "Courtline,"
but O'Keefe told Martin he should not get involved "for [his] own good."  *Id.* at ¶ 7.  Martin
viewed O'Keefe's statement as an "implied threat" and decided not to get involved for his safety.
*Id.* at ¶ 7.  Martin learned that Moore was transferred to Northern State Prison shortly thereafter.
*Id.* at ¶ 8.  Martin subsequently met Moore again at South Woods State Prison in the prison
library and told Moore that he witnessed the incident and that he would be willing to give a
statement.  *Id.* at ¶ 10.

Plaintiff also provides a contemporaneous written statement from another inmate, Inmate
Holifield, which is addressed to Lt. Shuster and describes the argument between Colon and
Moore, and also states that Colon assaulted Moore and that another officer was present and
joined in the assault.[9]  *See* Plaintiff's Exhibits at 4.

---

[9] In his opposition brief, Plaintiff appears to contend that the disciplinary hearing included either
Holifield's statement, his testimony, or both.

### e.  Procedural History

Plaintiff filed the instant Complaint on or about July 15, 2019.  *See* ECF No. 1.  The

Court screened the Complaint pursuant to 28 U.S.C. § 1915(e) and proceeded the excessive force

and failure to intervene claims against the moving Defendants and against non-moving

defendant, G. Santana.  *See* ECF No. 4.  The moving Defendants and Santana were served, ECF

No. 12-18, and the Attorney General's Office eventually entered an appearance on behalf of all

Defendants except G. Santana.[10]  *See* ECF Nos. 19-21, 26.

Discovery commenced, and Defendants filed their motion for summary judgment on

August 12, 2022.  Plaintiff filed his opposition brief and exhibits on December 2, 2022.  *See* ECF

Nos. 59-60.  Defendants did not file a reply brief responding to Plaintiff's additional evidence or

arguments.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the movant is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A factual dispute is

genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for

the non-moving party," and it is material only if it has the ability to "affect the outcome of the

suit under governing law."  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see*

*also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or

unnecessary facts will not preclude a grant of summary judgment.  *Anderson*, 477 U.S. at 248.

"In considering a motion for summary judgment, a district court may not make credibility

---

[10] G. Santana has not answered, and Plaintiff has not moved for default or sought default judgment against him.  The Court does not address the claims against him, as he has not appeared and is not represented by the Attorney General.

determinations or engage in any weighing of the evidence; instead, the non-moving party's

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v.*

*Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 447 U.S. at 255)); *see*

*also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v.*

*Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for

summary judgment. *Celotex*, 477 U.S. at 330. "A nonmoving party has created a genuine issue

of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."

*Gleason v. Norwest Mortg.*, Inc., 243 F.3d 130, 138 (3d Cir. 2001).

The non-moving party must present "more than a scintilla of evidence showing that there

is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005)

(quotations omitted). Thus, there can be "no genuine issue as to any material fact," if a party

fails "to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at

322–23. "[A] complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur.*

*Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## III.   <u>ANALYSIS</u>

Moving Defendants make three arguments in support of summary judgment. First, they

argue that Plaintiff's claims are wholly or partially barred by the Supreme Court's decisions in

*Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997). Second,

Defendants argue that Plaintiff's Eighth Amendment excessive force fail on the merits and that

they are entitled to qualified immunity on the excessive force claims. Finally they argue that

they are entitled to summary judgment on the failure to intervene claims.  The Court considers the arguments raised by Defendants below.

     **a.**  <u>The *Heck* Bar does not Apply to Plaintiff's Excessive Force Claims</u>

Defendants first argue that Plaintiff's § 1983 claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997).  *Heck* prohibits suit under § 1983 if success on the claim would necessarily imply that a prior conviction or sentence is invalid. 512 U.S. at 486–87.  But if the "plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," the claim implicates none of these concerns and may therefore proceed.  *Id.* at 487.

The Supreme Court first applied *Heck* to prison disciplinary proceedings in *Edwards v. Balisok*, 520 U.S. 641 (1997).  There, the Supreme Court applied *Heck* to a § 1983 claim for damages and declaratory relief brought by a state prisoner challenging the validity of <u>the procedures</u> used to deprive him of good-time credits.  *Id.* at 643.  The Court explained that "[t]he principal procedural defect complained of by [plaintiff] would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." 520 U.S. at 646.  Consequently, the Court held the claim was not cognizable under § 1983.  *Id.* at 648.

In *Muhammad v. Close*, 540 U.S. 749, 751 (2004), however, the Supreme Court clarified that "*Heck's* requirement to resort to state litigation and federal habeas before § 1983 is not . . . implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence."  In *Muhammed*, the Supreme Court resolved a circuit "split on the applicability of *Heck* to prison disciplinary proceedings in the absence of any implication going to the fact or duration of underlying sentence[.]"  *Id.* at 754.  The Court determined that the Sixth Circuit operated under "the mistaken view . . . that *Heck* applies categorically to all suits

challenging prison disciplinary proceedings" regardless of whether the suit "challenges the validity of the underlying sentence or affects its duration[.]"  *Id.*  The Court noted that disciplinary sanctions that affected the award or revocation of good time credits <u>could</u> affect a prisoner's underlying sentence but explained that no good time credits were implicated in the case before it.  *Id.* (explaining that although "administrative determinations . . . may affect the duration of time to be served (by bearing on the award or revocation of good-time credits) that is not necessarily so" because "[t]he effect of disciplinary proceedings on good-time credits is a matter of state law or regulation").  Because the lower court "expressly found or assumed that no good-time credits were eliminated by the prehearing action Muhammad called in question", the § 1983 suit "could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." *Id.* at 754–55.

It appears that Defendants have not argued or provided any evidence that the relevant disciplinary sanctions, which included a loss of commutation time, <u>necessarily</u> affects Plaintiff's underlying conviction or sentence, and they appear to assume that the conviction and sentence that matters for purposes of *Heck* is the disciplinary conviction and sentence.  That interpretation is at odds with the Supreme Court's decision in *Muhammed*, 540 U.S. 751-755; *see also id.* at 752 n.1 ("the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules").

It appears undisputed that Moore lost commutation time as a result of the *.002 and *.306 disciplinary infractions.  The record provided by Defendants lists loss of commutation time as sanctions, *see* Exhibits  J & K.  The Appellate Division's summary of the relevant facts and Plaintiff's disciplinary proceedings also indicates that Plaintiff lost commutation time:

> The hearing officer found Moore guilty of *.002 and *.306. For the
> *.002 charge, Moore was sentenced to 356 days of administrative
> segregation, <u>365 days loss of commutation time</u> and thirty days
> loss of recreation privileges. For the *.306 charge, Moore was
> sentenced to 180 days administrative segregation, <u>180 days loss of
> commutation time</u> and thirty days loss of recreation privileges.

*Moore v. New Jersey Department of Corrections*, No. A-1208-17T3, 2019 WL 2910713, at *1

(N.J. Super. App. Div. Jul. 8, 2019) (emphasis added).

The deprivation of credits is not the end of the matter for purposes of *Heck*, however.  As

noted by the Supreme Court in *Muhammed*, the issue of whether good time credits necessarily

affect a prisoner's sentence is a matter of state law and regulation.  Judge Hillman recently

analyzed this issue and found that New Jersey's good time credits do not necessarily mean an

earlier release date:

> Unlike federal good time credits, New Jersey "good time"
> does not "necessarily" mean an earlier release date as the credits
> are used to compute the prisoner's parole eligibility date. N.J.S.A.
> § 30:4-140. "Parole eligibility is different from parole suitability.
> The fact that a prisoner is eligible for parole means only that the
> paroling authority must consider his application for parole under
> the relevant parole guidelines." *Thomas v. Brennan*, 961 F.2d 612,
> 614 n.3 (7th Cir. 1992). Therefore, "restoration of [Plaintiff's]
> good-time credits would afford him only speedier consideration for
> discretionary parole, rather than ensure speedier release." *Marshall
> v. Milyard*, 415 F. App'x 850, 855 (10th Cir. 2011) (finding
> retaliation claim was not *Heck* barred). *See also Wilkinson* 544
> U.S. at 82 (finding suit challenging state procedures used to deny
> parole eligibility was not *Heck* barred because "it means at most
> new eligibility review, which at most will speed consideration of a
> new parole application." (emphasis in original)). Because
> restoration of Plaintiff's good time credits would have only
> presented the possibility of earlier release as opposed to the surety,
> *Heck* does not necessarily bar his claims. *See also Nelson v.
> Campbell*, 541 U.S. 637, 647 (2004) ("[W]e were careful in *Heck*
> to stress the importance of the term 'necessarily.' ").

*Ruiz v. New Jersey Department of Corrections*, No. 15-3304 (NLH), 2020 WL 1130210, at *3

(D.N.J. Mar. 9, 2020).  Because Defendants have not demonstrated that the loss of credits

necessarily lengthened Plaintiff's underlying sentence or addressed recent decisions in this area, they are not entitled to summary judgment on the basis of *Heck*.

Moreover, even if Plaintiff's loss of commutation time necessarily affects the length of Plaintiff's sentence (for which Defendants have offered no evidence or argument), Plaintiff is not challenging the procedures used in his disciplinary proceeding, like the prisoner in *Balisok*. Rather, he claims that Defendants used excessive force and/or failed to intervene during the relevant incident.  Plaintiff contends that he was hit from by Colon from behind, tackled by DeBari, and continually punched by both officers.  *See* SUMF, ¶¶ 26-31. Plaintiff also claims he was pepper sprayed by Sgt. Pomponio while handcuffed.  *See* SUMF ¶ 35.  Moreover, Plaintiff claims the escort team officers—Sgt. Soto, Sgt. Stanicki, and SCO Hahn—assaulted him again by banging his head on a wall on the way to and during the decontamination shower.  SUMF, ¶¶ 36, 40.  Defendants inexplicably claim that success on Plaintiff's excessive force claims would necessarily undermine his disciplinary convictions for *.002, assaulting any person, and *.306, conduct which disrupts or interferes with the security or orderly running of the correctional facility.

It is well established, however, that "the mere fact of a conviction for assault or similar conduct does not automatically preclude recovery on an excessive force claim brought under § 1983, arising out of the same incident." *Ramos-Ramirez v. Berwick Borough*, 819 F. App'x. 103, 106 (3d Cir. 2020).  In *Lora-Pena v. F.B.I.*, 529 F.3d 503 (3d Cir. 2008) (per curiam), for example, the plaintiff, a federal prisoner, filed a § 1983 and *Bivens* action against law enforcement officers alleging they used excessive force in the course of his arrest.  A federal officer admitted striking the plaintiff but only to the extent necessary to protect his firearm and subdue him.  As a result of the circumstances of the arrest, the plaintiff was found guilty by a

jury of three counts of assaulting a federal officer and resisting arrest.  But the Third Circuit held

that the *Heck* doctrine did not bar the plaintiff's action.  The court explained that "the question of

whether the officers used excessive force was not put before the jury." *Lora-Pena*, 529 F.3d at

506.  The plaintiff's convictions for resisting arrest and assaulting officers, the court added,

"would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive

(or unlawful) force in response to [the plaintiff's] own unlawful actions." 529 F.3d at 506.  If

excessive force claims are not barred after a criminal conviction for assault, they certainly are not

barred after a prison disciplinary charge of assault.

Here, there is no evidence before the Court that the Hearing Officer made any <u>factual</u>

<u>findings</u> that any of the corrections officers' use of force was justified or that it was not

excessive.  Thus, Plaintiff is free to claim that the officers' use of force was excessive under the

circumstances.  In addition, Plaintiff could have assaulted a staff member (presumably Colon)

and interfered with the operations of the prison and still pursue an Eighth Amendment claim due

to the extent of the force the officers used, including the repeated kicking and punching, the use

of OC spray while he was handcuffed, and the second assault by the escort team in the

decontamination area.

Defendants also appear to argue that even if Plaintiff's claims are not categorically barred

by *Heck* and *Edwards*, Plaintiff cannot offer any evidence that contradicts "the findings" of the

disciplinary hearing officer.  For this proposition, Defendants rely on *Concepcion v. Morton*, 125

F. Supp.2d 111, 123 (D.N.J. 2000), rev'd on other grounds by 306 F.3d 1347.  There, Judge

Wolfson held that two prisoners' action for excessive force could proceed so long as the court

did "not consider evidence that implies that the disciplinary punishments imposed against the

plaintiffs are invalid," and that therefore, "any facts used as a basis for plaintiffs' excessive force

claims cannot contradict the disciplinary proceedings arising from this same incident."[11] As

Plaintiff points out his opposition brief, other courts in this District have held that the dispositive

issue is not whether the still-valid prison disciplinary findings or punishment stem from the same

incident, but rather "'that a section 1983 claim cannot be pursued if it would necessarily imply

that the earlier determination process was invalid.'" *Johnson v. NJDOC*, No. 11-5764, 2015 WL

5603630, *4 (D.N.J. Sept. 23, 2015) (quoting *Lassiter v. Sherrer*, No. 09-2979, 2011 WL

4594203, *7 (D.N.J. Sept. 30, 2011)).

Moreover, it is not clear from the record in this case what disciplinary "findings" the

hearing officer made, if any, with respect to the .002 assault charges.  Defendants assume that the

Hearing Officer explicitly adopted all the evidence corrections staff submitted at the hearing,

including the full contents of their respective reports, but the record before the Court does not

support that conclusion.  The Defendants have not shown that the hearing officer adopted any of

the facts they presented other than the fact that Plaintiff committed an "assault," which resulted

in the *.002 finding and that the altercation delayed the movement inmates, resulting in the *.306

charge.  Similarly, the Appellate Division's decision merely recounts both parties' arguments

and finds there was sufficient evidence to uphold the disciplinary charges under the relevant

standard of review.

Furthermore, the Court is unconvinced that *Heck* operates as a doctrine that bars evidence

in an § 1983 action even where it does not bar the § 1983 claims.  As Judge Hillman explained in

---

[11] Notably, one of the plaintiffs in *Concepcion* was found guilty of assaulting a particular corrections officer and also pleaded guilty to aggravated assault in connection with that assault. *Id.* at 123-124.  Judge Wolfson specifically found that "under the principles of *Heck* and Edwards, the Court shall not consider [plaintiff] Ways' denial that he struck [defendant] Bleinstein, because it would imply the invalidity of his aggravated assault conviction.  *Id.* at 124.

*Ruiz*, "the Supreme Court has never held that parties are collaterally estopped from contesting facts from prison disciplinary findings." *Ruiz*, 2020 WL 1130210, at *4 (citing *Simpson v. Thomas*, 528 F.3d 685, 694 (9th Cir. 2008) ("Since the inception of the rule in *Heck*, the Court has only addressed this issue a few times, and in none of those cases did the Court address the use of *Heck* to bar evidence.").

Finally, Plaintiff also intends to offer evidence from inmate Martin, a witness who <u>did not</u> testify at the disciplinary hearing for reasons out of Plaintiff's control. Martin's version of events corroborates Plaintiff's account of the altercation, specifically that Colon attacked Plaintiff and that DeBari and Pomponio joined in the beating. Martin also states that he heard Colon and DeBari discussing a plan to lie in their reports and say that Plaintiff was the aggressor in the altercation, and that prison officials discouraged him from making a statement. In light of this evidence, the Court declines to bar Plaintiff from maintaining that he did not assault Colon or initiate the altercation.

As the late Judge Dickinson R. Debevoise of this District noted, *Concepcion* "conditions the preclusive effect of a disciplinary hearing's findings on the validity of that process." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 529 (D.N.J. 2008). In *Kounelis*, defendants argued that plaintiff could not proceed with his excessive force claim because he had been found guilty of unauthorized touching at a disciplinary proceeding. *Id.* at 528-29. The plaintiff submitted evidence that defendants failed to preserve the surveillance video, and Judge Debevoise concluded spoliation sanctions were warranted. *Id.* at 520. "Although Defendants accurately observe that the disciplinary hearing officer's finding of guilt has not been reversed, Defendants' argument ignores the fact that the disciplinary hearing itself is subject to attack and was impaired by the spoliation of evidence—evidence that may have supported Kounelis's version of events

and resulted in a finding of not guilty." *Id.* at 529. "Thus, there is sufficient evidence that Kounelis's disciplinary hearing was impaired and, if so, Kounelis is not precluded from presenting evidence in support of his § 1983 claim for violation of his Eighth Amendment rights." *Id.*

Similarly, in this case, Plaintiff has provided evidence that two of the Defendants (Colon and DeBari) colluded to write false disciplinary reports naming Plaintiff as the aggressor and that Martin was discouraged from making a statement supporting Plaintiff's version of the incident. Defendants have not filed a reply brief to address these problematic facts, and the Court will not impose an evidentiary bar under these circumstances.

For these reasons, the Court finds that *Heck* does not bar Plaintiff's excessive force claims in part or in whole, and the Court denies summary judgment on this issue.

**b. Defendants are not Entitled to Summary Judgment or Qualified Immunity on the Excessive Force Claims**

Defendants next argue that Plaintiff's excessive force claims fail on the merits and that they are entitled to qualified immunity on the excessive force claims. When an inmate alleges that a prison official used excessive and unjustified force, the Eighth Amendment controls. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The subjective inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)); *see also Giles v. Kearney*, 571 F.3d 318, 328 (3d Cir. 2009). The objective inquiry is whether the inmate's injury was more than *de minimis*. *Id.* at 9–10.

The relevant factors the court must consider are:

(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible

> officials on the basis of the facts known to them; and (5) any
> efforts made to temper the severity of a forceful response.

*Giles v. Kearney*, 571 F.3d at 328.

Defendants' merits analysis relies on numerous disputed facts, which they maintain were determined by the Hearing Officer in Plaintiff's disciplinary proceeding. The Court, however, has found that *Heck* is inapplicable for the reasons stated in the prior section of this Opinion and has also declined to apply *Heck* as an evidentiary bar in this case. Thus, the Court views all disputed facts in the light most favorable to Plaintiff in analyzing the merits of his excessive force claims.

Moreover, even if Plaintiff "assaulted" Colon and there was a need for some force, there are triable issues of material fact with respect to whether Colon, DeBari, and Pomponio used excessive force in subduing Plaintiff. *See, e.g.*, *Lora-Pena*, 529 F.3d at 506. Plaintiff testified that Colon and DeBari punched and kicked him repeatedly while he was in a fetal position and that he kept his hands over his face to protect himself from the blows. Martin's certification corroborates Plaintiff's account and, Martin also states that Pomponio participated in the beating. Whether Plaintiff was otherwise fighting back is disputed. Pomponio then deployed OC spray in Plaintiff's face after he was already handcuffed. Here, even assuming that Moore assaulted Colon and initially refused to remove his hands from his face because he was being struck, there are triable issues of fact with respect to the extent of the force used, the extent of the threat to the officers' or other inmates' safety, and the extent to which the officers made efforts to temper their use of force.

Defendants also focus on whether Plaintiff sustained "permanent" injuries, but Plaintiff has presented evidence that he suffered a laceration of his lip, which required stitches, a traumatic brain injury, and a shoulder injury. It is well established that "'[w]hen prison officials

maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident.  Otherwise the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Brooks v. Kyler*, 204 F.3d 102, 108–09 (3d Cir. 2000) (quoting *Hudson*, 503 U.S. at 9); *see also Smith v. Mensinger*, 293 F.3d 641, 648–49 (3d Cir. 2002) (explaining that "the Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries").

    The Eighth Amendment does not, however, protect an inmate against an objectively de minimis use of force.  *Smith*, 293 F.3d at 648 (citing *Hudson*, 503 U.S. at 9–10).  Defendants do not argue and the record does not support that Plaintiff's injuries were de minimis.  Because Plaintiff need not suffer serious injury, let alone permanent injury, to proceed on his excessive force claims, Defendants are not entitled to summary judgment on the basis that Plaintiff did not suffer permanent injuries.

    With respect to the second assault by the escort team, Defendants note in their brief that Plaintiff did not see who hit him during this assault; however, they provide no legal arguments regarding this issue or otherwise discuss the use of force by Defendants Soto, Hahn, and Stanicki.  The Court is unable to think of any justification for repeatedly banging Plaintiff's head into the wall in the decontamination shower after Plaintiff was subdued.  Summary Judgment on the excessive force claims is therefore denied as to Soto, Hahn, and Stanicki.

    Defendants also contend they are entitled to qualified immunity on the excessive force claims because they did not violate Plaintiff's statutory or constitutional rights.  An award of qualified immunity protects a government official from civil liability and suit "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To

overcome a defendant's claim of qualified immunity, the court must determine: "(1) that the

official violated a statutory or constitutional right, and (2) that the right was clearly established at

the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal

quotation marks omitted); *see also Williams v. Secretary Pennsylvania Department of*

*Corrections*, 848 F.3d 549, 557 (3d Cir. 2017) ("We first determine whether a right has been

violated.  If it has, we then must decide if the right at issue was clearly established when violated

such that it would have been clear to a reasonable person that her conduct was unlawful.").

Pursuant to the Supreme Court's explanation in *Pearson v. Callahan*, those inquiries need not be

addressed in sequence; instead, courts are entitled to "exercise their sound discretion" and decide

which issue to first address. *See* 555 U.S. 223, 236 (2009).  The defendant official is entitled to

qualified immunity if either prong is not satisfied.  *See id.* at 244-45.

Defendants cite to a single nonprecedential Third Circuit decision, *Smith v. Price*, 610 F.

App'x. 113, 115 (3d Cir. 2015), to support their argument for qualified immunity.  *Smith* is an

Eighth Amendment excessive force case involving video evidence, and the Third Circuit

described the use of force as follows:

> On February 17, 2011, correctional staff at the State
> Correctional Institute in Smithfield, Pennsylvania, used force
> against Smith twice. The first incident occurred after Smith's
> exercise period when, for reasons the parties dispute, several
> guards grabbed Smith and pressed him against an exercise pen.
> The second incident occurred shortly thereafter when the guards
> were escorting Smith back to his cell. For reasons that are again
> disputed, several guards forced Smith to the ground and struggled
> to shackle and restrain him. Prison video cameras recorded both
> incidents from multiple angles, but the recordings are silent and do
> not show everything.

The District Court for the Middle District of Pennsylvania granted summary judgment finding

that the defendants were entitled to qualified immunity because Plaintiff's constitutional rights

were not violated in either incident.  *Smith v. Price*, No. 3:11–CV–1581, 2014 WL 4187527, at

*7 (M.D. Pa. Aug, 22, 2014).  After reviewing the video evidence, the Third Circuit agreed that

summary judgment was proper with respect to the first incident but disagreed that summary

judgment was warranted with respect to the second incident.  *Smith*, 610 F. App'x.  at 116.

    As to the first incident, the defendants contended they used force on Smith because, by

turning to face and step towards them, he violated prison rules and orders to exit the pen

backwards.  Smith claimed that no such rule existed and that he received no such orders, but the

Third Circuit found that the evidence as a whole clearly contradicted his contentions.  *Id.* at 116.

The Third Circuit further explained that "the video show[ed] that the defendants used limited

force to restore discipline, not cause harm, and thus the District Court correctly concluded that

the force used was not excessive under the Eighth Amendment."  *Id.* (citing *Hudson*, 503 U.S. at

6).

    As to the second incident, the Smith contended

> the guards exacted gratuitous violence during this struggle,
> including hitting his face into the floor, punching him, rubbing his
> face in blood, jumping on him, putting extreme pressure on his
> neck, and generally beating his body. The defendants deny these
> assertions and contend that the video evidence blatantly contradicts
> them.

*Id.* at 117.  The Third Circuit disagreed that the video evidence blatantly contradicted Smith's

account and therefore accepted the plaintiff's version of the facts as true—that "the defendants

forced him to the ground while handcuffed and gratuitously assaulted him without provocation

or cause[,]" *id.* at 117.  The Third Circuit therefore reversed the dismissal of the excessive force

claims arising from the second assault.

    In their qualified immunity argument, Defendants argue that Plaintiff's altercation with

Colon, DeBari, and Pomponio is comparable to the first incident in *Smith* and that the officers

used reasonable force to subdue Moore after he assaulted Colon and disobeyed the officers directions to remove his hands from his face.  The Court disagrees that the incidents are comparable.

In the first incident in *Smith*, "[s]everal guards . . . push[ed] Smith into the opposite pen gate, where they h[eld] him still for several seconds before releasing pressure and leading him down the corridor to his housing unit." *See id.* at 116.  The Third Circuit aptly described this use of force as "limited" and found it reasonable in light of Smith's failure to comply with the officer's instructions.  In contrast, Moore contends that Defendants Colon, DeBari, and Pomponio repeatedly kicked and punched him while he was in a fetal position, and that Plaintiff only refused to remove his hands from his face to protect himself from the officers' blows.  After Plaintiff was already handcuffed, Pomponio deployed OC spray at him.  If anything, this incident is more akin to the second incident in *Smith* where the Third Circuit reversed the grant of summary judgment.  As noted above, there are plainly triable issues of fact as to whether the use of force by Colon, DeBari, and Pomponio was reasonable, and thus qualified immunity on prong one is denied as to these officers.[12]

Again, Defendants make no legal arguments regarding the use of force by the members of the escort team, and qualified immunity is likewise denied as to these officers.

---

[12] Defendants also vaguely contend that there is no clearly established law that would put them on notice that their conduct was unlawful, but they cite no Eighth Amendment excessive force decisions analyzing the clearly established prong of qualified immunity.  The Court declines to address prong two or grant qualified immunity to Defendants in the absence of adequate briefing on this issue.  The Court also notes, however, that when viewed in the light most favorable to Plaintiff, the facts of this case do not support a qualified immunity defense for the officers accused of intentional wrongdoing.

### c. Defendants are Entitled to Summary Judgment on the Failure to Intervene Claims

Finally, the Defendants argue they are entitled to summary judgment on the failure to intervene claims. "[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so. Furthermore, . . . a corrections officer cannot escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers." *Smith v. Mensinger*, 293 F.3d at 650. Failure to intervene occurs when a defendant stands by and permits an assault or other violation to occur despite having a reasonable opportunity to stop it. For instance, the plaintiff in *Smith v. Mensinger* brought a failure to intervene claim against one of the officers who did not take part in the beating; the plaintiff claimed, however, that the officer could be liable under the Eighth Amendment if he witnessed the assault and did nothing to stop it. *See id.* at 650. The crux of a failure to intervene claim is witnessing a constitutional violation and doing nothing to stop it.

In his opposition brief, Plaintiff appears to contend that DeBari and Pomponio should have intervened to stop the assault but instead participated in it. Plaintiff has not provided any evidence showing that DeBari and Pomponio stood by and did nothing as he was assaulted; rather, he has provided evidence that they arrived on the scene and immediately joined Colon in assaulting him. As such, Plaintiff's excessive force claims survive against these Defendants, but his failure to intervene claims do not, and the Court grants summary judgment on these claims as to DeBari and Pomponio. To the extent Plaintiff contends that Colon and DeBari should have stopped Pomponio from deploying the OC spray, he has not provided any evidence that they had a reasonable opportunity to do so, and summary judgment is likewise granted on that failure to intervene claim.

The failure to intervene claims against Soto, Hahn, and Stanicki also fail because there is no evidence before the Court that one or more of these officers stood by and watched the other officers slam Plaintiff's head into the wall and failed to stop the assault despite having an opportunity to do so.  Thus, although Plaintiff's excessive force claims against Soto, Hahn, and Stanicki survive summary judgment, the failure to intervene claims do not.  As such, the Court also grants summary judgment on the failure to intervene claims against Soto, Hahn, and Stanicki.

**IV.**     <u>**CONCLUSION**</u>

For the reasons explained in this decision, the Court denies summary judgment on the Eighth Amendment excessive force claims against all moving Defendants and grants summary judgment on the failure to intervene claims against all moving Defendants.  An appropriate Order follows.

_____
Madeline Cox Arleo
United States District Judge

DATED: March  _28_, 2023.